United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| DOLLY FOXWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 16-10243-NMG |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Dolly Foxworth ("Foxworth" or "plaintiff") seeks judicial review of the denial of her application for disability benefits by defendant, Carolyn W. Colvin ("the Commissioner" or "defendant"), in her official capacity as Commissioner of the Social Security Administration ("SSA"). Before the Court are plaintiff's motion to reverse or remand the decision of the Commissioner and defendant's motion for an order affirming her decision. For the reasons that follow, the motion to reverse or remand will be denied and the motion to affirm will be allowed.

**I.  Background**

**A.  Employment History and Alleged Disability**

Foxworth was born in 1963 and has a seventh grade education. She states that she experienced physical, sexual and emotional abuse from certain family members and acquaintances

-1-

during her childhood.  She also purportedly suffered physical and emotional abuse from two former spouses.

For the past 15 years, Foxworth has worked in a variety of jobs.  From 1997 to 2001, she was a cashier, salesperson and shelf stocker at a Kmart.  In the early 2000s, she worked at a metal finishing company dying metal airplane parts.  From 2002 to 2005, she worked at a cat shelter.  In 2010 and 2011, she worked as a counter at Reynolds Food Packaging and a paper sorter at a Christmas Tree Shop.  Since 2011, Foxworth has been unemployed.  To support herself, she relies on state disability payments, food stamps and Section Eight housing subsidies.

The record shows that, since 2000, Foxworth has sought treatment for mental and physical health issues from numerous psychologists, doctors, therapists and other professionals.  She has been diagnosed with chronic obstructive pulmonary disease ("COPD"), sleep apnea, Hepatitis C, morbid obesity, major depressive disorder, bi-polar disorder, anxiety, affective disorder, a learning disability and post-traumatic stress disorder ("PTSD").

**B.   Procedural Background**

In 2012, Foxworth applied for supplemental security income under Title XVI of the Social Security Act ("the Act") and for disability insurance benefits under Title II of the Act. Plaintiff alleges that she became disabled in March, 2011

because of the numerous ailments described above.  In April, 2013, the SSA denied Foxworth's claim and the following September her claim was again denied after reconsideration.

In October, 2013, Foxworth filed a request for a review hearing which was held in July, 2014, before Administrative Law Judge Paul W. Goodale ("the ALJ").  Foxworth was represented by counsel and the testifying witnesses were Foxworth and an impartial third party, vocational expert James Scorzelli Ph.D. ("Dr. Scorzelli" or "vocational expert").  The ALJ found that Foxworth was not disabled under § 1614(a)(3)(A) of the Act.

In October, 2014, Foxworth filed a timely appeal of the ALJ's decision to the Appeals Council.  In December, 2015, the Appeals Council denied her request for review.  In February, 2016, Foxworth filed her complaint in this Court.

**C. The ALJ's Decision**

The ALJ applied the five-step test promulgated by the SSA to determine if a claimant is disabled and may obtained benefits under § 1602 of the Act. 42 U.S.C. § 1381a.  The test evaluates 1) whether the claimant is engaged in a "substantial gainful activity", 2) whether she has a severe impairment, 3) if there is a severe impairment, whether it is equivalent to impairments identified in the regulation, 4) whether the claimant's residual functional capacity ("RFC") is adequate for her previous work and, if not, 5) whether there are other jobs in the economy to

which the claimant could adjust. 20 C.F.R. § 404.1520(a); see also Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982).

In some circumstances, the guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a), commonly referred to as "the Grid", mandate a specific conclusion with respect to whether a claimant is disabled. The Grid takes into account age, education level, prior work experience and whether an individual has an RFC of "sedentary", "light", "medium" or "heavy" work and then determines, based on those factors, whether the individual is disabled.

Under the five-step analysis, the ALJ found that Foxworth was not engaged in substantial gainful activity and that she had several severe impairments but they were not equivalent to those identified in the Social Security Regulations. He further concluded that she had an RFC of light work with significant limitations, including an inability to stand for more than four hours a day. He also determined that she has numerous nonexertional limitations, including that she may work only at a low stress job and have only occasional interactions with others.

In his decision, the ALJ observed that the Grid is a tool to help simplify the disability analysis for the adjudicator. He stated that if an applicant is unable to perform the work

considered appropriate for her RFC due to nonexertional limitations, the Grid does not apply.  Because nonexertional limitations prevented Foxworth from performing many light work jobs, the ALJ determined that the Grid did not apply to her.  To determine if there were any light work jobs to which she could adjust, he sought the testimony of a vocational expert, Dr. Scorzelli.

Dr. Scorzelli concluded that when her physical limits alone are considered, Foxworth can perform the light work job of cashier.  When he took her nonexertional limits into account, however, Dr. Scorzelli determined that Foxworth cannot work as a cashier because it involves too many interactions with people but that she could adjust to three other jobs: 1) a call-out operator, 2) an addresser and 3) a surveillance system monitor.  These three jobs all fall within the sedentary RFC classification.  Because Dr. Scorzelli's testimony establishes that Foxworth can successfully adjust to jobs available in the economy, the ALJ found that she was not disabled.

Finally, the ALJ concluded that Foxworth is not entitled to Title II benefits because her date last insured for the purposes of her Title II application was March 11, 2011, and before that date, her claims for Title II benefits were denied in a final administrative decision.

II. **Legal Analysis**

**A. Legal Standard**

The Act gives United States District Courts ("District Courts") the power to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not de novo, however. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B. Application**

Foxworth submits that when the ALJ denied her benefits he 1) improperly found that she had a RFC of light work, 2) failed to revise the RFC of light work to sedentary after Dr. Scorzelli's testimony, 3) ignored a medical assessment and

4) wrongly calculated her date last insured for her Title II claim.

### 1. The ALJ's Initial RFC Determination

Foxworth claims that, because testimony from Dr. Scorzelli showed that only sedentary jobs are suitable for her, the ALJ's determination that her RFC is light work was in error. The Commissioner responds that the ALJ's decision was correct because he properly applied the law in his disability determination and that plaintiff's objections are based on a misunderstanding of the regulatory framework.

The Commissioner's contention that the ALJ correctly determined that Foxworth's RFC is light work is sound. The SSA regulations define "light work" to include lifting up to 20 pounds on occasion, frequently lifting 10 pounds, a good deal of walking or standing and some pushing or pulling of leg and arm controls. 20 C.F.R. § 416.967(b). There is substantial evidence in the record to buttress the ALJ's finding of an RFC of light work and the ALJ correctly applied the legal standard.

First, substantial evidence exists to support the ALJ's conclusion that Foxworth's RFC is light work with significant limitations. Testimony and documentation indicate that Foxworth is able to complete household tasks on her own, visit with family, go grocery shopping and attend appointments. The record also indicates that her condition improves when she follows

4) wrongly calculated her date last insured for her Title II claim.

### 1. The ALJ's Initial RFC Determination

Foxworth claims that, because testimony from Dr. Scorzelli showed that only sedentary jobs are suitable for her, the ALJ's determination that her RFC is light work was in error. The Commissioner responds that the ALJ's decision was correct because he properly applied the law in his disability determination and that plaintiff's objections are based on a misunderstanding of the regulatory framework.

The Commissioner's contention that the ALJ correctly determined that Foxworth's RFC is light work is sound. The SSA regulations define "light work" to include lifting up to 20 pounds on occasion, frequently lifting 10 pounds, a good deal of walking or standing and some pushing or pulling of leg and arm controls. 20 C.F.R. § 416.967(b). There is substantial evidence in the record to buttress the ALJ's finding of an RFC of light work and the ALJ correctly applied the legal standard.

First, substantial evidence exists to support the ALJ's conclusion that Foxworth's RFC is light work with significant limitations. Testimony and documentation indicate that Foxworth is able to complete household tasks on her own, visit with family, go grocery shopping and attend appointments. The record also indicates that her condition improves when she follows

4) wrongly calculated her date last insured for her Title II claim.

### 1. The ALJ's Initial RFC Determination

Foxworth claims that, because testimony from Dr. Scorzelli showed that only sedentary jobs are suitable for her, the ALJ's determination that her RFC is light work was in error. The Commissioner responds that the ALJ's decision was correct because he properly applied the law in his disability determination and that plaintiff's objections are based on a misunderstanding of the regulatory framework.

The Commissioner's contention that the ALJ correctly determined that Foxworth's RFC is light work is sound. The SSA regulations define "light work" to include lifting up to 20 pounds on occasion, frequently lifting 10 pounds, a good deal of walking or standing and some pushing or pulling of leg and arm controls. 20 C.F.R. § 416.967(b). There is substantial evidence in the record to buttress the ALJ's finding of an RFC of light work and the ALJ correctly applied the legal standard.

First, substantial evidence exists to support the ALJ's conclusion that Foxworth's RFC is light work with significant limitations. Testimony and documentation indicate that Foxworth is able to complete household tasks on her own, visit with family, go grocery shopping and attend appointments. The record also indicates that her condition improves when she follows

prescribed treatment regimens. The opinions of medical doctors and psychologists Drs. Julie Cohen, Ronald Nappi, Mark Colb and Rudolph Titanji also support the ALJ's decision.

Second, as addressed above, the ALJ correctly applied the five-step test for determining whether a claimant is disabled. In applying the test, he considered relevant evidence contained in the record and did not substitute his judgment for the uncontroverted medical evidence. Accordingly, because the ALJ relied on substantial evidence and applied the correct legal standard, his decision must be upheld. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 2 (1st Cir. 1987).

### 2. The ALJ's Refusal to Revise Foxworth's RFC to Sedentary Work After Dr. Scorzelli's Testimony

Foxworth asserts that the ALJ should have revised her RFC based on Dr. Scorzelli's determination that she could only perform sedentary jobs. If her RFC were changed from light to sedentary work, she would be considered disabled under the Grid. The Commissioner responds that the Grid does not apply because the RFC is determined before the vocational expert's analysis and a vocational expert's testimony regarding nonexertional factors does not change the RFC.

This Court agrees with defendant's contention that the RFC is determined prior to a vocational expert's testimony concerning nonexertional limitations and does not change because

of it.  The First Circuit Court of Appeals ("First Circuit") has not directly addressed whether the RFC should change based on a vocational expert's analysis.  Other United States Courts of Appeals that have addressed the matter have disagreed.  The Ninth Circuit Court of Appeals has held that if a vocational expert fails to identify a suitable job at a specified RFC, the RFC must be adjusted based on the expert's testimony and the Grid must be applied based on the adjusted RFC. See Diastasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); see also Cooper v. Sullivan, 880 F.2d 1152, 1157 (9th Cir. 1989).  Conversely, the Sixth Circuit Court of Appeals ("Sixth Circuit") has concluded that "the [vocational expert's] testimony depends upon the RFC and not the other way around." Anderson v. Comm'r of Soc. Sec., 406 Fed. Appx. 32, 36 (6th Cir. 2010).  Accordingly, the Sixth Circuit does not retroactively change the RFC based on a vocational expert's testimony. Id.

This Court finds that the Sixth Circuit approach is appropriate.  First Circuit decisions are consistent with an understanding of the Grid as a tool of expediency utilized to reduce the need for testimony from a vocational expert when a claimant's traits align neatly with the Grid. See Sherwin v. Sec'y of Health & Human Servs., 685 F.2d 1, 5 (1st Cir. 1982) (finding that the Grid is a simplification of the labor market that provides information about available jobs based on a

-9-

claimant's characteristics); see also Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (holding that the Grid should be used instead of vocational expert testimony when a claimant's characteristics meet the Grid criteria).

Under the First Circuit approach, if a claimant is on the lower end of an RFC and it is unclear whether the Grid will apply, a vocational expert is brought in to clarify what jobs, if any, are available in the general economy for the claimant. Ortiz, 890 F.2d at 524-25. Furthermore, the Grid:

> assumes merely that enough jobs are available for [non-disabled] claimants that, in all likelihood, there will be at least some jobs that each such claimant can perform.

Sherwin, 685 F.2d at 5. When the Grid does not apply, vocational expert testimony satisfies the purposes of the Grid, as well as the ultimate goal of the five-step test promulgated by the SSA, by determining whether or not significant jobs exist in the general economy for a claimant. See 20 C.F.R. § 404.1520(a)(4)(v). Accordingly, because this Court concludes that the RFC does not change based on a vocational expert's testimony, there was no error in the ALJ's refusal to revise the RFC after Dr. Scorzelli's testimony.

### 3. Dr. Robert Mullaly's Findings

Foxworth maintains that the ALJ erred by ignoring the medical assessment of psychiatrist Dr. Robert Mullaly. Specifically, she submits that the ALJ ignored Dr. Mullaly's

opinion that she had a global assessment of functioning ("GAF") score of 50. Plaintiff contends this GAF score of 50, along with Dr. Mullaly's finding that there is a low probability of Foxworth improving her ability to function, renders her unable to hold almost any job. According to Foxworth, the ALJ did not consider this evidence and, if he had, he should have determined that she was unable to perform jobs available in the economy and thus disabled.

Although the ALJ never specifically mentioned Dr. Mullaly, he explicitly stated that he reviewed and considered Foxworth's Massachusetts state disability application contained in Exhibit B14F. The first section of Exhibit B14F is the report produced by Dr. Mullaly, so it is logical to conclude that the ALJ considered that report. The ALJ noted that he gave little weight to that section as many of its findings were contradicted by Foxworth's own testimony at the hearing. Given that Dr. Mullaly's opinion was a fairly old one, from 2000, and that subsequent evidence on the record showed an increase in GAF and other capabilities, the ALJ's discounting of Dr. Mullaly's evidence was reasonable, sufficient and does not warrant a remand for consideration.

### 4. Calculation of Foxworth's Date Last Insured

Foxworth is correct in noting the ALJ erred in calculating her Date Last Insured ("DLI") for Title II benefits. It appears

that the ALJ referenced an earlier application for disability benefits when determining a DLI of March 31, 2011, and did not report the DLI listed on a more recent application which was December 31, 2013.  Regardless, the SSA determines disability in an identical fashion for Title II and Title XVI, so the finding that Foxworth is not disabled under Title XVI necessitates the same finding under Title II, making this error harmless. See 20 C.F.R. § 404.1520(a)(3); see also Seavey v. Barhart, 276 F.3d 1, 5 (1st Cir. 2001).

ORDER

In accordance with the foregoing, plaintiff's motion to reverse or remand the decision of the Commissioner (Docket No. 16) is **DENIED** and defendant's motion for an order affirming the decision of the Commissioner (Docket No. 22) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 19, 2017